UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALLEN F. PHIFER,

          Plaintiff,       18-CV-744Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #16.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on March 7, 2014, alleging disability beginning December 5, 2013, at the age of 30, due to schizophrenia. Dkt. #7, p.157.

On October 4, 2016, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Michele Erbacher, at an administrative hearing before Administrative Law Judge ("ALJ"), Bryce Baird. Dkt. #7, pp.46-77.

Plaintiff testified that he was unable to work because of his depression and schizophrenia, which was diagnosed when he was a teenager. Dkt. #7, pp.54 & 56. He testified that he had been taking Risperdal or Zyprexa for his mental health symptoms, which includes auditory hallucinations, since he was diagnosed. Dkt. #7, pp.54-56 & 58. Plaintiff testified that the hallucinations can come at any time. Dkt. #7, p.66. He also testified to mood swings and an inability to get along with people. Dkt. #7, p.66. Plaintiff's education ceased during the ninth grade and he has not been able to obtain a GED. Dkt. #7, pp.57, 66 & 70. He does not have a driver's license. Dkt. #7, p.59. Plaintiff takes the bus to New York City every other weekend for mental health treatment. Dkt. #7, p.68. Plaintiff also takes the bus for groceries. Dkt. #7, p.60. He cleans his apartment. Dkt. #7, p.60. He spends his time playing video games with his girlfriends' family and friends. Dkt. #7, pp.60-61.

The VE was asked to assume an individual with the residual functional capacity ("RFC"), to perform work at any exertional level with no postural or manipulative limitations but was limited to work that requires doing the same simple, routine tasks everyday that could be learned after a short demonstration or within 30 days and would require no travel to unfamiliar locations and little variation in location, hours or tasks, and does not involve production rate or pace or involve team work and could be performed individually, with no more than superficial interaction with the public or occasional interaction with coworkers. Dkt #7, pp.71-73. The VE responded that such an individual would be capable of working as a janitor, industrial cleaner or floor waxer, each of which were unskilled positions. Dkt. #7, pp.72-73. When asked to assume that

such an individual would respond inappropriately to criticism on a weekly basis or would be absent three days per week or would be off task 25% of the work day, the VE responded that such an individual would not be able sustain employment. Dkt. #7, pp.73-74.

The ALJ rendered a decision that plaintiff was not disabled on April 5, 2017. Dkt. #7, pp.25-39. The Appeals Council denied review on May 9, 2018. Dkt. #7, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 5, 2018. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since he filed his application for benefits on March 7, 2014; (2) plaintiff's schizophrenia and depression constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the residual functional capacity to perform work at all exertional levels with the following limitations: simple, routine tasks that can be learned after a short demonstration or within 30 days with no production rate, pace work or teamwork and which is generally performed independently, with no more than superficial interaction with the public and no more than occasional interaction with coworkers or supervisors and which requires doing the same tasks every day with little variation in location, hours or tasks and does not require travel to unfamiliar places; and (5) plaintiff was capable of performing work as a janitor, industrial cleaner or floor waxer and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.30-31.

Plaintiff argues that the inconsistencies between the three medical opinions issued by Dr. Adler at Neurobehavioral Research Inc. on June 21-22, 2016 required the ALJ to re-contact Dr. Adler to clarify his opinion regarding plaintiff's functional capacity rather than to choose one such opinion over another. Dkt. #9-1, pp.14-20. Plaintiff further argues that the medical record supports greater limitations than those imposed by the ALJ in his RFC determination. Dkt. #9-1, pp.21-22.

The Commissioner responds that the ALJ explained the weight he afforded to Dr. Adler's opinions and the reason he gave little weight to Dr. Adler's more restrictive opinions because they were not supported by Dr. Adler's own findings as well

as other evidence of record, including the opinion of the consultative examiner and one of plaintiff's mental health counselors. Dkt. #14-1, pp.20-26. The Commissioner argues that the ALJ's RFC is supported by substantial evidence within the record. Dkt. #14-1, pp.27-28.

Plaintiff replies that the record contains insufficient objective medical evidence to allow the ALJ to reconcile conflicts between Dr. Adler's divergent opinions or to support the ALJ's determination regarding plaintiffs RFC. Dkt. #15, pp.2-3.

In light of the essentially non-adversarial nature of a social security proceeding, it is well accepted that an ALJ has an affirmative duty to develop the administrative record. *See, e.g., Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). Due to the difficulty in determining whether individuals suffering from mental illness will be able to adapt to the demands or stress of the workplace, the duty to develop the record is particularly important where mental illness is present. *Marcano v. Berryhill*, 17 Civ. 4442, 2018 WL 5619749, at *11 (S.D.N.Y. July 13, 2018). This duty exists even when the claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). However, the ALJ is required to seek out additional evidence only where there are obvious gaps in the record. *Eusepi v. Colvin,* 595 Fed. App'x 7, 9 (2d Cir. 2014).

The ALJ is not obligated to seek additional medical records where the record evidence is sufficient for the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec.,* 16-CV-831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).

More specifically, the duty to re-contact a treating physician arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings, not when the treating physician's opinion is inconsistent with the treating physician's own prior opinions and the rest of the record. *Morris v. Berryhill*, 721 Fed. App'x 25, 28 (2d Cir. 2018). Because it is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts within that record, so long as the record provides sufficient evidence for such a resolution, the ALJ is under no obligation to seek additional information from a medical provider to resolve discrepancies in that provider's findings. *Micheli v. Astrue*, 501 Fed. App'x 26, 29-30 (2d Cir. 2012).

An ALJ is not required to adopt wholesale the opinion any one medical source, but is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). Where the opinion of a treating physician is not consistent with other substantial evidence in the record, such as the opinions of other medical experts, it need not be given controlling weight. *Halloran v. Branhart*, 362 F.3d 28, 32 (2d Cir. 2004). Moreover, where the opinion of a treating physician contains internal inconsistencies or contradicts the treating physician's treatment notes, the opinion of the treating physician is not entitled to controlling weight. *Monroe v. Cimm'r of Soc. Sec'y*, 676 Fed. App'x 5, 7 (2d Cir. 2017). Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, an ALJ may not substitute his own lay opinion for those of medical experts. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

In the instant case, the issue is not a lack of evidence or a gap in the record, but the propriety of the ALJ's assessment of Dr. Adler's medical opinions and treatment notes within the context of the entire evidentiary record, which also included consulting psychiatric opinion evidence and a medical source statement from plaintiff's licensed mental health counselor, as well as treatment notes from psychological counseling.

Susan Santarpia, Ph.D., completed a consulting psychiatric evaluation of plaintiff on July 7, 2014. Dkt. #7, p.321. Plaintiff reported fluctuating mood and irritability, as well as hallucinations, and questioned whether his Risperdal, which he had been taking for ten years and made him drowsy, helped his symptoms. Dkt. #7, pp.321-322. Dr. Santarpia observed plaintiff to be cooperative and well groomed, with appropriate eye contact, adequate expressive and receptive language and full range of affect. Dkt. #7, pp.322-323. He appeared coherent and goal directed with no evidence of hallucinations, delusions or paranoia. Dkt. #7, p.323. Dr. Santaroia determined that plaintiff's attention and concentration was mildly impaired due to his limited educational experience and estimated his cognitive functioning to be in the low average range of ability. Dkt. #7, p.323. Dr. Santarpia opined that plaintiff

> presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. Mild impairment is demonstrated in learning new tasks, and mild to moderate impairment is demonstrated in [ability to] perform complex tasks independently. Difficulties caused by reported psychotic symptoms.

> The results of the present evaluation appear to be consistent with psychiatric problems but in and of itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

Dkt. #7, p.324. Dr. Santapria recommended that plaintiff continue with psychological and psychiatric treatment, as well as drug and alcohol treatment, and that he consider vocational training and rehabilitation. Dkt. #7, p.324.

David Adler, M.D. is a research psychiatrist for a study plaintiff participated in at Neurobehavior Research Inc., regarding the addition of Samidorphan to Zyprexa for treatment of schizophrenia. Dkt. #7, pp.543 & 615. During the initial screening for the study on November 18, 2015, Dr. Adler noted plaintiff to be oriented to person, place, time and situation and observed plaintiff to be friendly and cooperative with appropriate affect, euthymic mood and no thought process disorder, audio visual hallucinations or apparent delusions. Dkt. #7, p.548. Plaintiff's recent remote memory was intact and his insight was good. Dkt. #7, p.548. On December 9, 2015, Dr. Adler's progress notes indicate that plaintiff's overall function was minimally improved. Dkt. #7, p.609. On December 16, 2015, Dr. Adler noted no apparent delusions. Dkt. #7, p.610. On December 23 & 30, 2015, Dr. Adler noted that plaintiff denied auditory or visual hallucinations and depression. Dkt. #7, pp.611-612. On January 6, 2016, Dr. Adler noted anxiety and depression caused by difficulty between plaintiff and his daughter's mother, but no auditory or visual hallucinations or delusions. Dkt. #7, p.557. On January 11, 2016, Dr. Adler noted no auditory or visual hallucinations or delusions and a denial of depression. Dkt. #7, p.614.

On January 12, 2016, Licensed Mental Health Counselor ("LMHC"), Joanne Barber, completed an assessment of plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting. Dkt. #7, pp.523-525. She opined that plaintiff's ability to follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; deal with work stresses; function independently; maintain attention/concentration; understand, remember and carry out complex job instructions; understand, remember and carry out detailed, but not complex instructions; understand, remember and carry out simple job instructions; and maintain personal appearance was good and that his ability to behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability was fair. Dkt. #7, pp.523-524. The form defined good as a limited but satisfactory ability to function and fair as a seriously limited, but not precluded ability to function. Dkt. #7, p.523.

On January 20, 2016, Dr. Adler noted that plaintiff was doing well with no auditory or visual hallucinations and approved his participation in the study. Dkt. #7, p.615. Dr. Adler noted that plaintiff was doing well and denied depression or side effects on February 3, 2016 and February 17, 2016. Dkt. #7, pp.616-617. On March 16, 2016, Dr. Adler noted that plaintiff was content and denied depression or auditory or visual hallucinations. Dkt. #7, p.618. On April 13, 2016, Dr. Adler reported no complaints of auditory hallucinations or delusions or depression. Dkt. #7, p.619. On May 11, 2016, Dr. Adler noted that plaintiff was doing well but was very anxious that he would be afforded visitation with his daughter for the first time in years. Dkt. #7, p.620.

On June 8, 2016, Dr. Adler noted no auditory or visual hallucinations. Dkt. #7, p.621. On June 22, 2016, Dr. Adler observed no apparent delusions and noted that plaintiff denied depression. Dkt. #7, p.622.

On June 22, 2016, Dr. Adler completed a form regarding plaintiff's ability to do work-related activities on a day-to-day basis. Dkt. #7, p.559. He opined that plaintiff would be seriously limited in his ability to function, but not precluded, in the following areas:

> ability to relate to co-workers;
>
> ability to deal with the public;
>
> ability to interact with supervisors;
>
> ability to deal with work stress;
>
> ability to behave in an emotionally stable manner; and
>
> ability to relate predictably in social situations.

Dkt. #7, pp.559-560. He further opined that plaintiff's capacity to function would be good/satisfactory in the following areas:

> ability to follow work rules;
>
> ability to use judgment;
>
> ability to function independently;
>
> ability to maintain attention/concentration;
>
> ability to understand, remember and carry out complex job instructions;
>
> ability to understand, remember and carry out detailed but not complex job instructions;

ability to understand, remember and carry out simple job instructions;

ability to maintain personal appearance; and

ability to demonstrate reliability.

Dkt. #7, p.559-560. The form defined good as a limited but satisfactory ability to function and fair as a seriously limited, but not precluded ability to function. Dkt. #7, p.Dr. Adler explained that plaintiff's ability to focus and concentrate fluctuates and noted that plaintiff has a history of serious life and personal problems including paranoia and fighting. Dkt. #7, p.560.

On the same date, Dr. Adler completed a Medical Statement Concerning Personality Disorder for Social Security Disability Claim. Dkt. #7, p.563. On that form, Dr. Adler opined that plaintiff would have moderate difficulty maintaining social functioning and deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner in work settings or elsewhere, as well as repeated episodes of deterioration or decompensation in work or work-like settings. Dkt. #7, p.563. Dr. Adler opined that plaintiff would be markedly impaired in the following areas:

ability to understand and remember detailed instructions;

ability to work in coordination with and proximity with others without being distracted by them;

ability to accept instructions and respond appropriately to criticism from supervisors; and

ability to get along with coworker or peers without distracting them or exhibiting behavioral extremes.

Dkt. #7, p.564. He further opined that plaintiff would be moderately impaired in the following areas:

ability to remember locations and work-like procedures;

ability to understand and remember short and simple instructions;

ability to carry out detailed instructions;

ability to maintain attention and concentration for extended periods;

ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;

ability to sustain an ordinary routine without special supervision;

ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

ability to interact appropriately with the general public;

ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and

ability to set realistic goals or make plans independently of others.

Dkt. #7, pp.563-564.

Also in June, Dr. Adler completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination. Dkt. #7, p.566. On that form, Dr. Adler indicated that he had provided outpatient pyschopharmacology to plaintiff for 8 months and opined that plaintiff would be very limited in his ability to function in a work setting at a consistent pace and moderately limited in the following areas:

understand and remember instructions;

> carry out instructions;
>
> maintain attention/concentration;
>
> interact appropriately with others; and
>
> maintain socially appropriate behavior without exhibiting behavior extremes.

Dkt. #7, p.567. Dr. Adler opined that plaintiff had no limitations in his ability to make simple decisions and maintain basic standards of personal hygiene and grooming. Dkt. #7, p.567.

In analyzing the medical opinion evidence, the ALJ gave great weight to the assessment of Dr. Santarpia and the medical source statement of LMHC Barber, while noting that recent medical evidence and hearing testimony showed plaintiff to be more restricted in his ability to perform tasks. Dkt. #7, p.35. The ALJ gave significant weight to Dr. Adler's June 22, 2016 assessment at Dkt. #7, pp.559-561, but gave little weight to his June 22, 2016 opinion at Dkt. #7, p.563 that plaintiff had moderate to marked limitations in social functioning or his opinion at Dkt. #7, p.567 that plaintiff had very limited ability to function in a work setting at a consistent pace, finding these opinions were "not consistent with Dr. Adler's own findings of fair to good abilities, let alone the overall mental status findings in the record, demonstrating mild to moderate, not marked, limitations, as discussed above." Dkt. #7, p.36. The ALJ also noted that plaintiff's "limited medical record reveals that when compliant, the medications have been relatively effective in controlling the claimant's symptoms" and noted "some evidence of medication non-compliance and failure to show for medical appointments"

and that "the medical evidence of record consistently indicated relatively normal to mild examination findings." Dkt. #7, p.36.

The ALJ's assessment of plaintiff's RFC is supported by substantial evidence. Specifically, the ALJ's determination that plaintiff was capable of performing simple, routine tasks with no production rate is supported by LMHC Barber's assessment that plaintiff's ability to follow work rules, function independently, maintain attention/concentration and understand, remember and carry out complex, detailed and simple job instructions was good. Dkt. #7, 523-524. It is further supported by Dr. Santarpia's opinion upon consulting examination that plaintiff would be able to follow and understand simple directions and instructions and perform simple tasks independently. Dkt. #7, p.324. Furthermore, the ALJ's determination that plaintiff could withstand up to occasional interaction with coworkers or supervisors is supported by LMHC Barber's assessment that plaintiff's ability to relate to co-workers, deal with the public, use judgment, interact with supervisors and deal with work stresses was good. Dkt. #7, p.523-524. It is further supported by Dr. Santarpia's opinion upon consulting examination that plaintiff presents as able to relate adequately with others. Dkt. #7, p.324. Moreover, plaintiff testified at his hearing that he regularly used public transportation, including twice monthly bus trips to New York City to participate in Dr. Adler's research study, and that he maintained social relationships with friends and family. Dkt. #7, pp.60-61 & 68. He also reported to Dr. Santarpia that he maintained social relationships with friends and family. Dkt. #7, p.323.

Dr. Adler's treatment notes do not reveal objective mental status examinations or therapeutic engagement with plaintiff that would support a determination that plaintiff was not capable of engaging in substantial gainful employment. Rather, Dr. Adler's treatment notes suggest that plaintiff was doing well on his medication, with no auditory or visual hallucinations or depression. Dkt. #7, pp.548, 611-612, 614, 615, 618, 619, 621 & 622. Dr. Adler also observed plaintiff to be friendly and cooperative with appropriate affect. Dkt. #7, p.548. Thus, it was appropriate for the ALJ to afford greater weight to Dr. Adler's least restrictive medical source statement than Dr. Adler's more restrictive medical source statements. In any event, while the different forms assess different weights to similar areas of functioning, the areas of functional limitation are generally consistent across forms and are accounted for in the ALJ's RFC. For example, the ALJ accounts for Dr. Adler's most restrictive assessments, *to wit*, that plaintiff would be markedly limited in his ability to accept instruction and respond appropriately to criticism from supervisors and to work in coordination and proximity with others without being distracted by them and to get along with coworkers without distracting them or exhibiting behavioral extremes (Dkt. #7, p.564), and that he would be very limited in his ability to function in a work setting at a consistent pace (Dkt. #7, p.567), by limiting plaintiff to no more than occasional interaction with coworkers and supervisors in a position in which he could work independently and would be performing the same tasks every day with little variation in tasks and without production rate, pace work or teamwork. Similarly, Dr. Adler's assessment of moderate mental functional limitations/impairments are addressed by the ALJ's RFC limiting plaintiff to simple, routine tasks that can be learned after a short demonstration or within 30 days with no

production rate, pace work or teamwork and which is generally performed independently, with no more than superficial interaction with the public and no more than occasional interaction with coworkers or supervisors and which requires doing the same tasks every day with little variation in location, hours or tasks and does not require travel to unfamiliar places.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #14), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
                **March 3, 2020**

                                     *H. Kenneth Schroeder, Jr.*
                                       **H. KENNETH SCHROEDER, JR.**
                                       **United States Magistrate Judge**